UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:21-CR-20045-TGB-KGA** |
| Plaintiff, | |
| | **ORDER DENYING MOTION** |
| vs. | **TO SUPPRESS** |
| | **(ECF NO. 13)** |
| **PRESTON PIERCE,** | |
| Defendant. | |

In this drug trafficking case, Defendant Preston Pierce moves to suppress evidence found in his Buick LeSabre, which was parked two lots over from his house in Jackson, Michigan, where a state search warrant was executed. Although Defendant points out that the warrant was over-broad and that the officers arguably exceeded its scope, the evidence was validly seized under the automobile exception to the search warrant requirement, because the officers had probable cause to believe the Buick contained evidence of drug trafficking. Consequently, the motion to suppress will be denied.

## I.   Background

On August 14, 2020, officers of the Jackson Narcotics Enforcement Team ("JNET") executed a search warrant at Defendant Preston Pierce's

1

home located at 132 E. Robinson Street in Jackson, Michigan.  ECF No. 16-1, PageID.55.

The warrant had been issued the day before by Magistrate Frederick C. Bishop of the 12th District Court in Jackson County, Michigan. The warrant describes the "person, place, or thing to be searched" as follows:

> 132 E Robinson St. Jackson[,] MI 49203, is a two story single family residence, that is light yellow in color and has white trim.  This residence sits on the north side of E Robinson St[.], and is the 5th residence west of S Milwaukee St. The numbers "132" are clearly posted on the front of the residence next to the front door.  The front door of the residence is on the south side of the building and faces south towards E Robinson St. This residence has a light yellowed colored detached garage that sits on the northeast side of the property.
>
> ***Any and all persons present or that arrive during the execution of this search warrant, including their extremities, clothing, and vehicles.***
>
> Preston Depreice Pierce, a black male with a DOB of [redacted], whether he is located at the residence or elsewhere at the time the search warrant is executed.
>
> Any and all out buildings or garages belonging to 132 E Robinson St.
>
> Any and all communication devices including but not limited to, cellular telephones and pagers.

ECF No. 16-1, PageID.55 (emphasis added).

The warrant also detailed facts establishing probable cause, including that within 72 hours of the issuance of the warrant, a confidential

informant purchased heroin from Pierce at 132 E. Robinson Street.  ECF No. 16-1, PageID.58.  It also stated that, within 48 hours of execution of the warrant, JNET officers observed Pierce drive a green Buick LeSabre to a parking lot behind 1620 E. Michigan Ave., Jackson, MI 49203.  *Id.* at PageID.59.  An unidentified white male sat in the passenger seat of the Buick.  About 8 minutes later, the white male exited the Buick and drove off in a red Chevy Impala.  Officers followed the white male driver and pulled him over for a subsequent traffic violation.  *Id.* at PageID.59-60.  During a consensual search and interview, they learned that the white male driver had purchased approximately 4.6 grams of meth from Pierce during the meeting in the parking lot. *Id.* at PageID.60.  The warrant also noted Pierce's prior criminal record for the distribution and manufacture of a controlled substance.  In fact, officers discovered that at the time of surveillance, Pierce was on supervised probation for a narcotic offense.  *Id.*

Defendant Pierce and his girlfriend were home at 132 E. Robinson Street at the time the warrant was executed.  ECF No. 15, PageID.43.  Pierce's Buick LeSabre, which had been observed conducting drug transactions, was parked two lots east of the residence.  ECF No. 13, PageID.30.  Using a car key found during the search of the home, JNET officers also searched Pierce's vehicle and found methamphetamine, heroine, pills, a digital scale, and packaging material.  ECF No. 15, PageID.44.  Pierce was arrested and advised of his *Miranda* rights, and

he admitted to being involved in narcotics distribution and that the drugs and paraphernalia located in the Buick belonged to him.  *Id.*

Pierce has been indicted on three counts of possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841.  ECF No. 1.  He now seeks to have the evidence and his confession suppressed as unlawfully obtained in violation of the Fourth Amendment.  ECF No. 13, PageID.29.

## II.    Standard of Review

### A.    The Particularity Requirement

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *United States v. Dobbins*, 482 F. App'x 35, 39 (6th Cir. 2012).  The purpose of this requirement is to prevent general searches and to prevent the seizure of an item at the discretion of an officer.  *Id.*  The Sixth Circuit employs "'a two-part test for determining whether a description in a warrant is sufficient to satisfy the particularity requirement: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched.'" *Id.* (citations omitted).  Warrants should not be overbroad; in

other words, a search warrant should be "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Grant*, 2021 WL 4955193 at *9 (W.D. Ky. Oct. 25, 2021) (quoting *Guest v. Leis*, 255 F.3d 325, 337 (6th Cir. 2001)).  However, the "degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991).  In the case of a vehicle search, the Sixth Circuit has held in an unpublished decision that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." *United States v. Hudson*, 52 F.3d 326 (Table), 1995 WL 234680 at *7 (6th Cir. Apr. 20, 1995); *United States v. Griesbeck*, 2011 WL 528579, at *3 (E.D. Mich. Feb. 8, 2011); *see also United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990) (collecting cases).

## B.   The Exclusionary Rule

When officers "flagrant[ly] disregard . . . the limitations of a search warrant," *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir.1985), "[a] search pursuant to a valid warrant may devolve into an invalid general search*." United States v. Garcia*, 496 F.3d 495, 507 (6th Cir.2007).  Under current Sixth Circuit law, "an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant *in the places searched*' (rather than the items seized)."  *Id.* (citations omitted); *see also United States v. Muse*, 729 F. Supp. 2d 905, 909 (E.D. Mich.

5

2010).  "The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant."  *Id*. (citations omitted).  Any evidence unlawfully seized must be suppressed, unless the search falls under a few well-established exceptions.  *Id*.

One such exception is the good faith exception, established by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 913 (1984).  Under *Leon*, where an officer reasonably relies upon a defective warrant in the execution of a search, so long as the warrant appears to be facially valid and properly executed, evidence seized pursuant to the defective warrant will still be admissible.  *See United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998); *United States v. Perkins*, 258 F. Supp. 3d 868, 883 (E.D. Tenn. 2017), *aff'd*, 887 F.3d 272 (6th Cir. 2018).

Where the warrant is valid, but the searching officers exceed its scope, the good faith exception may also apply.  The "*Leon* exception may save a search that exceeds the scope of a warrant if officers reasonably mistake what may be found within a home's curtilage."  *United States v. Biles*, 100 F. App'x 484, 494 (6th Cir. 2004) (collecting cases).

Another such exception is the automobile exception to the search warrant requirement: the exclusionary rule does not bar the use of evidence resulting from the warrantless search of an automobile provided that the search had independent grounds of probable cause.  *See United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States*

*v. Lumpkin*, 159 F.3d 983, 986 (6th Cir.1998) (citations omitted) (holding police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime").

### III.   Positions of the Parties

The description of things to be seized in the search warrant of Defendant Pierce's residence is subject to two possible interpretations that affect how it must be analyzed.  That description is the language in the warrant authorizing the officers to search "any and all persons present or that arrive during the execution of [the] search warrant including their extremities, clothing, **and vehicles.**"  ECF No. 16-1, PageID.55 (emphasis added).

The Government claims Pierce's Buick was parked on the street "a few feet" from Pierce's residence and located "adjacent" to his home.  ECF No.15, PageID.47.  Moreover, the Government argues that officers were granted "specific permission to search the vehicles of persons present during the execution of the warrant." *Id.*  Therefore, because Pierce was present at the time of the search, the search of the Buick was within the scope of the warrant. *Id.*  For the Government, the term "present" only applies to the *persons* who are located on the premises or arrive there during the search.  Noting that the warrant did not limit the search of vehicles to those in Pierce's driveway or curtilage, the Government argues it was reasonable to search a vehicle belonging to a person who was

at the residence where that vehicle was recently identified in a narcotics transaction and was parked only "few feet"[1] away from the residence. ECF No. 15, PageID.47.

Although Pierce does not explicitly challenge the validity of the search warrant, he does contest the Government's interpretation of the search warrant. Pierce claims the search of his vehicle, parked two lots east of his residence, did not fall within the boundaries of the search warrant because it was not on the premises, or within the confines of his curtilage for Fourth Amendment purposes. ECF No. 13, PageID.30. Rather, Pierce reads the warrant to limit the search to individuals who are **present** or arrive *at the residence during the search*, including any vehicles or clothing that *are also present at the residence* or arrive *during the search.* ECF No. 13, PageID.32. Under this reading, the term "present" would limit the officers' ability to search only those persons (or their extremities, clothing, or vehicles) that are present at the premises of 132 E. Robinson Street. And the officers would have exceeded the scope of the warrant because the Buick, being parked two lots away from the search warrant address, was not "present" at the residence.

The Government's way of reading the warrant is to take the plain terms as they stand: the officers are allowed to search any persons who

---

[1] The precise distance between the vehicle and the residence is not provided in the record, although photographs admitted during the hearing show that it was parked approximately two lots away.

arrive during the search, and their vehicles (wherever those vehicles may be). On such a reading, the question is whether a warrant of such unlimited scope would be subject to challenge for overbreadth. Pierce's way of reading the warrant is to infer that the limiting language "persons present or that arrive" also applies to "vehicles"—in other words, that only those vehicles that are present on the premises, or that arrive during the search, are subject to being searched. On this reading the question is not whether the warrant is overbroad, but whether the officers exceeded the scope of the warrant by searching a vehicle that was arguably not "present" on the premises.

## IV.   Analysis

### A.   The Warrant is Overbroad

To satisfy the particularity requirement a warrant must (1) describe the place to be searched with sufficient particularity so that the executing officers can locate and identify the premises with reasonable effort and (2) specify the premises adequately enough to prevent the inadvertent search of the wrong premises. *See Dobbins,* 482 F. App'x at 39 (citations omitted). Here, the warrant described the place to be searched as "the premises known as 132 E Robinson St." ECF No. 16-1, PageID.61. The warrant also authorized JNET officers to search "[a]ny and all persons present or that arrive during the execution of this search warrant, including their extremities, clothing, *and vehicles*." ECF No 16-1,

PageID.55 (emphasis added). At issue is whether the description of the place to be searched met the particularity requirement of the Fourth Amendment. Specifically, is the description authorizing the search of any persons "present or that arrive" at the residence during the search, "including their extremities, clothing, and vehicles" sufficiently particular to limit the discretion of the officers to search only the areas that probable cause permits and prevent the kind of unbounded rummaging or "exploratory searches" that the Fourth Amendment was designed to prevent. *See Garcia*, 496 F.3d at 510. The particularity requirement requires that warrants should be "as specific as the circumstances and the nature of the activity under investigation permit," *Grant*, 2021 WL 4955193 at *9, but the "degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *Blakeney*, 942 F.2d at 1026.

The Government's reading of the warrant is that its terms authorized the search of any persons who are present, or may arrive, "and their vehicles." Such a reading would clearly render the warrant defective for overbreadth because it would permit a search of a "present" person's vehicle, wherever that vehicle may be.[2] And such an unbounded authorization—to search a vehicle anywhere—clearly offers no guidance to limit

_____

[2] Notably, this interpretation is consistent with another provision in the warrant, where it also authorizes the search of Pierce regardless of where he may be, as well as any person(s) located at the residence regardless of

10

the discretion of the executing officers.  That kind of interpretation could theoretically permit the officers to search a visiting neighbor's car that was then parked at the airport.  Such a reading divorces the justification for the search—probable cause to believe that drugs would be at the house—from the place where the search is being authorized: a car located anywhere that happened to belong to someone who is present at the house.

If this is the reading relied on by the Government, the Court would find the warrant's description of things to be seized to be overbroad in violation of the particularity requirement.  But Defendant takes a narrower reading, interpreting the language of the warrant only to authorize searching vehicles that were present at the search address.  Under this reading, the question becomes whether the officers did in fact extend their search beyond the permissible scope of Pierce's residence.  Analyzing this question requires a discussion of the caselaw relating to the scope of curtilage.

## B.    The Officers Exceeded the Scope of the Warrant

Generally, "a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the

_____

whether evidence shows they are involved in criminal activity, directly in violation of the Fourth Amendment.  *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

curtilage." *United States v. Biles*, 100 F. App'x 484, 491 (6th Cir. 2004).
For Fourth Amendment purposes, the Supreme Court considers curtilage
to be the area "immediately surrounding and associated with the home,"
and therefore a "part of the home itself," warranting a legitimate expec-
tation of privacy. *United States v. Dunn*, 480 U.S. 294, 300 (1987); *Id.*
(internal citations omitted).

The Supreme Court has referenced four factors for resolving
whether a particular area is curtilage: "(1) the proximity of the area
claimed to be curtilage to the home, (2) whether the area is included
within an enclosure surrounding the home, (3) the nature of the uses to
which the area is put, and (4) the steps taken by the resident to protect
the area from observation by people passing by." *Dunn*, 480 U.S. at 300;
*United States v. Coleman*, 923 F.3d 450 (6th Cir.), *cert. denied*, 140 S. Ct.
580 (2019). It is a "fact-intensive analysis" conducted on a case-by-case
basis. *Id.* (citations omitted).

On the facts before the Court, at the time of the execution of the
warrant, the Buick does not appear to have been parked within the legal
concept of the curtilage of Pierce's home for the following reasons: (1) the
vehicle was parked two lots east of the residence; (2) the street was a
public residential street as to which Pierce had no legitimate expectation
of privacy; (3) the residential street is accessible to anyone, even individ-
uals who do not own property; (4) and no efforts can be taken to preclude
observation of a vehicle parked on a public street.

Although no case is precisely on point, Sixth Circuit case law also supports the conclusion that the Buick was not parked within the legal concept of the curtilage and that a warrant cannot extend Pierce's curtilage beyond the common sense understanding of his private property.  In *United States v. Estes*, the Sixth Circuit held that "at least three of the factors in *Dunn* undercut a finding that [defendant's] driveway represented curtilage" because "the area was not closed," "defendant had not taken any steps to protect the area from observation by people passing by," and "it was used as a point of entry into the residence, accessible from the adjacent [public] alley." 343 F. App'x 97, 101(6th Cir. 2009), (internal quotation marks omitted).

Similarly, in *United States v. Galaviz,* the court found that, while "the driveway was directly adjacent to the house," it "was not enclosed by a fence or other barrier and was short, with the portion of the driveway where [the defendant's] car was parked directly abutting the public sidewalk," and that "no apparent steps were taken by the residents of the house to protect the driveway from observation by passersby—no hedges or bushes obstructed the view of the driveway from the sidewalk or street, for example." 645 F.3d at 356 (6th Cir. 2011); *See also Coleman,* 923 F.3d at 456 (holding defendant's shared driveway in condominium complex not considered curtilage under the *Dunn* factors).

But the above-cited cases arise in the context where an officer has responded to a residence without a warrant, and then observed evidence

of a crime in an adjacent driveway—and the question is whether the evidence may be seized because the officers were lawfully on the driveway and it was in plain view, or whether the officer should have gotten a warrant because the driveway falls within the curtilage of the home. The situation in our case is different because the question is whether a search warrant that particularly describes a residence as the place to be seized, can be said to authorize a search of a vehicle parked two lots away on the grounds that the car was within the curtilage of the residence.

As to Sixth Circuit cases involving the execution of search warrants and the extent of curtilage, though fact-specific, they generally stand for the proposition that a warrant's writ will encompass the areas that are reasonably considered within the scope of the premises.

For example, in *United States v. Bennett*, 170 F.3d 632, 638 (6th Cir.1999), the Sixth Circuit found that the warrant included within its scope a detached shop building even though the warrant and the affidavit did not identify the shop itself as a place to be searched. *Id*. at 637–38. The shop building in *Bennett* stood approximately 60 to 100 feet apart from the residence. *Id*. at 638. Without further discussion of the layout, the court concluded that "the shop building and residence are, for all practical purposes, one single location because the outbuilding is within the curtilage of the 'premises' for which the search warrant was issued." *Id*. at 639.

Likewise, in *United States v. Combs*, officers obtained a search warrant for "the premises," including [the] house and "all outbuildings and vehicles thereon, including any and all adjacent properties used by [defendant's father.]"  468 F.2d 1390, 1391 (6th Cir. 1972).  After confiscating numerous firearms during the search of the home, officers then searched a vehicle parked in a lot adjoining the home, some twenty feet away from the house.  *Id*. at 1390.  The Court noted "there is testimony that it was parked where the Combs family generally parked their cars, although it appears that the ground on which it was parked may not actually have belonged to [defendant's father]."  *Id*. at 1391.  Because the warrant described "the premises" as including the house "and all outbuildings and vehicles thereon, including any and all adjacent properties . . . ," the Sixth Circuit concluded the vehicle was parked "on 'the premises' and situated closely enough to the house to be within legal concept of curtilage." *Id*. at 1392.

Here, the warrant does not describe the premises as including the public street, several lots away from Pierce's residence; nor—reasonably—could it do so.  Based on the evidence presented, the Buick was not parked within the legal concept of curtilage and the warrant does not extend Pierce's curtilage beyond the common sense understanding of his private property. *See United States v. Coleman*, 923 F.3d 450 (6th Cir.), *cert. denied*, 140 S. Ct. 580, 205 L. Ed. 2d 360 (2019) (citing *United States v. Jones*, 893 F.3d 66, 72 (2d Cir. 2018) ("[defendant's] appeal . . . fails

because the driveway in which [defendant's] vehicle was parked was the shared driveway of tenants in two multi-family buildings and was not within the curtilage of [defendant's] private home.")).

Consequently, even assuming the warrant encompassed the curtilage of the premises, it did not authorize the search of the Buick, parked on a public street, two lots away from the premises—clearly beyond the boundaries of the property's curtilage.

## C.    The Good Faith Exception Need not be Considered

The Government argues that even if this Court found the warrant to be overbroad or that the officers exceeded its scope, the evidence Pierce seeks to suppress should not be excluded pursuant to the good faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984).  Under *Leon*, when officers act in reasonable reliance on a search warrant that is later found to be invalid, the exclusionary rule does not bar the use of the evidence the police obtained. *Id.* at 913. *Biles*, 100 F. App'x at 493-94.

Where, as in this case, the warrant is found to be defective, there are only four limitations to the good faith exception: (1) if the magistrate is misled by false information; (2) if the magistrate abandons his role as impartial judge; (3) if the affidavit for the warrant is so lacking in probable cause that reliance on it is objectively unreasonable; (4) if the warrant is facially deficient, "i.e. failing to particularize the place to be searched or the things to be seized . . ." *United States v. Van Shutters*, 163 F.3d

331, 337 (6th Cir. 1998) (internal citations omitted); *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016).

Given the unlimited scope of the warrant—allowing the search of a vehicle, wherever it may be, as long as the owner is present at the search location—it is difficult to see how an officer's reliance on such a warrant would be objectively reasonable. However, even if the warrant's language is given the narrower interpretation suggested by Pierce—that it only authorized the search of any vehicles that arrived at the premises—the good faith exception would still need to be considered, because the *Leon* exception also protects the reasonable mistakes of officers who exceed the bounds of curtilage.

Pierce cites a number of cases arguing that *Leon* should not apply because the officers exceeded the scope of a search warrant by disregarding the "straightforward language" of the issuing magistrate. ECF No. 13, PageID.32. (citing *United States v. Perkins*, 258 F. Supp. 3d 868, 880-81 (E.D. Tenn. 2017) (officers not entitled to good faith exception where they exceeded scope of anticipatory warrant by not following procedures); *United States v. Muse*, 729 F.Supp.2d 905 (E.D. Mich. 2010) (agents not entitled to the good faith exception where they were authorized to search a designated suite in an office building, but exceeded the scope by searching the adjacent suite); *United States v. King*, 227 F.3d 732 (6th Cir. 2000)

(the good faith exception did not apply where officer searched the basement of a two-family dwelling, not directly accessible from defendant's unit, and not authorized by the warrant)).

But there is also case law holding that the good faith exception can save the evidence discovered during a search if it was objectively reasonable for the officers to believe that the vehicle was within the curtilage. *United States v. Biles*, 100 Fed.Appx. 484, 494 (6th Cir. 2004) ("[T]he *Leon* exception may save a search that exceeds the scope of a warrant if officers reasonably mistake what may be found within a home's curtilage.") (citing, e.g., *United States v. Gorman*, 104 F.3d 272, 275–76 (9th Cir.1996); *United States v. Earls*, 42 F.3d 1321 (10th Cir.1994); *United States v. Asselin*, 775 F.2d 445 (1st Cir.1985)).

Here, given that the vehicle was clearly not on the premises, the Court is hard-pressed to conclude that an objectively reasonable officer would not realize he was off the property's curtilage when he was searching a car on a public street, two houses down from the warrant location. But even if the good faith exception were found not to apply here, the evidence seized from Defendant's vehicle would be admissible because probable cause existed to search Defendant's vehicle, so the search was authorized under the automobile exception to the search warrant requirement.

### D.    The Automobile Exception Applies

Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir.1998) (citations omitted)).  "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).  In other words, there is "no separate exigency requirement." *Smith*, 510 F.3d at 647 (quoting *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)).

Probable cause is defined as "'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Smith*, 510 F.3d at 647-48 (citations omitted).  The court's determination of whether probable cause existed at the time of the search is a "'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Id.* at 648 (citations omitted).  In determining whether there was probable cause, the court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the "objective facts known to the officers at the time of the search." *Id.* (citations omitted).  Probable cause "may come from a confidential informant's tip, when sufficiently detailed and corroborated by

the independent investigation of law enforcement officers." *Id.* (quoting *Lumpkin*, 159 F.3d at 986.

The Sixth Circuit's analysis in *United States v. Smith* provides an appropriate framework for weighing the evidence in the present case.  In *Smith*, defendant moved to suppress evidence obtained from his vehicle parked "slightly off of the premises" at the time of execution of a warrant authorizing officers to search his residence.  *Smith*, 510 F.3d at 647.  In holding that the search of defendant's vehicle was valid under the auto-mobile exception to the warrant requirement, the district court noted the following facts:

> (1) the car was previously seen on the premises but was slightly off the premises when searched; (2) the keys to the car were found inside [defendant's] residence; (3) defendant was a co-owner of the car; (4) defendant and his confederates were alleged to have "moved about when disposing of controlled substances by way of vehicles;" (5) defendant and his confed-erates sold controlled substances out of vehicles; (6) officers found a significant amount of cash in the residence; (7) there was a history of drug dealing on the premises; (8) residue was found in baggies in trash pulls at the residence; (9) guns were discovered in the residence; and (10) there were "other indicia of a lifestyle" that would suggest drug dealing.

*Id.*  Based on these facts, the district court concluded the police officers had probable cause to believe the car should be "if not immediately searched, at least taken as part of the seizure of vehicles used in the course of drug trafficking and inventory-searched." *Id.* at 648.

The facts of this case are quite similar: (1) officers previously observed the Buick on the premises, but it was parked two lots away at the time of the search; (2) officers found the keys to the Buick inside Pierce's residence; (3) Pierce is an authorized user of the car; (4) officers witnessed Pierce use the car to execute a drug sale two days prior to the search; (5) the recipient of the drug sale confessed that he purchased 3 grams of meth while sitting in Pierce's Buick; (6) Pierce has a prior conviction history of manufacturing and delivering drugs; (7) at the time of arrest Pierce was on probation for a narcotics offense. *See generally*, Warrant, ECF No. 16-1.

Although it had been almost 48 hours since officers witnessed Pierce use the Buick to transact a drug exchange, the surveillance of the vehicle along with interrogation of a customer admitting to the drug sale, was enough to establish probable cause that the vehicle was likely to contain evidence of drug trafficking. The law does not require exigent circumstances and the vehicle was readily mobile. The same probable cause that supported the search warrant for the residence where a drug transaction took place also supports a search of the vehicle, that was also used for a drug transaction. Thus, the search of the vehicle was based on probable cause and a warrant was not required because of the automobile exception. Consequently, even if the warrant was too broad, or if the officers exceeded its scope, the search of Pierce's vehicle was lawful.

###### E.    Defendant's Admissions are Admissible

Pierce also moves to suppress any statements he made after he was arrested as a result of what he alleges to be an unlawful search.  For the reasons explained below, the Court denies his motion because the statements are admissible.

Evidence derived from an unlawful search or arrest must be suppressed as the "fruit of the poisonous tree."  *Nardone v. United States*, 308 U.S. 338, 341 (1939); *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005).  The rule "extends as well to the indirect as the direct products" of unconstitutional conduct.  *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).  Had this Court determined the search of the vehicle to be unlawful, the subsequent arrest and interrogation would also be unlawful, and all statements taken as a consequence of evidence discovered in Pierce's vehicle would be suppressed.  However, because the automobile exception applies, and there is no evidence that Pierce's *Miranda* rights were violated, Pierce's statements were not derived from illegally obtained evidence and the Government is not precluded from using them at trial.

## V.    Conclusion

For the foregoing reasons, Defendant's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

/s/Terrence G. Berg
HONORABLE TERRENCE G. BERG
United States District Judge

Dated: December 9, 2021